**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

Unite Here Health,

Plaintiff

v.

Timothy R. Titolo, et al.,

Defendants

2:15-cv-02160-JAD-NJK

**Order Denying Motion for Default Judgment Against Lisa Titolo**

[ECF No. 31]

Titolo Law Office and its sole owner, Timothy Titolo, cross-claim against Timothy's ex-wife and former office manager Lisa Titolo (aka Lisa Lambrecht) for contribution, indemnity, embezzlement, and intentional misrepresentation.[1] The Law Firm and Timothy allege that Lisa pilfered money from the Law Firm's client-trust account and withdrew the cash value of several life-insurance polices by forging Timothy's signature.[2]

The Law Firm and Timothy now move for default judgment on their cross-claims against Lisa, but they have not demonstrated their entitlement to this relief. The statutory requirements are not met for their contribution cross-claim. Default judgment is not appropriate for the embezzlement—now conversion—cross-claim because Timothy and the Law Firm have not shown that the funds that Lisa took from the trust account were their own personal property. Nor have they identified an agreement between Lisa and Timothy on which their contractual-indemnity cross-claim can stand. The only cross-claim that the movants have shown they can recover on is for intentional misrepresentation, but they have not sufficiently proven the amount of their damages for that claim. I therefore deny this motion for default judgment.

---

[1] ECF No. 9.

[2] *Id.*; ECF No. 31-1 at 108. The cross-claimants attach the transcript of Lisa's testimony at Timothy's State Bar hearing and other evidence to support facts that are not pled in the cross-complaint. I give weight to this evidence even though I do not accept some of the altered cross-claims in the moving papers. FED. R CIV. P. 55(b)(2)(C).

**Background**

Lisa was an employee at the Law Firm for over twenty years until she quit in September 2014.[3] Her duties included resolving the Law Firm's medical liens and paying other bills.[4] Lisa represented to her husband that she had paid settlement funds and awards to lienholders.[5] But she had not paid the lienholders,[6] and she took money from the Law Firm's client-trust account without Timothy's authorization.[7] At times, Lisa created false checks and reconciliation reports for Timothy to review and sign.[8] She also made cash withdrawals from her husband and two daughters' whole-life insurance policies by forging Timothy's signature.[9]

Timothy and Lisa divorced in October 2014.[10] At a State Bar hearing in February 2015, Lisa admitted to embezzling roughly $665,000 from the Law Firm,[11] and she admitted to withdrawing money from the life-insurance policies.[12] In October 2015, Timothy and Lisa stipulated in a divorce decree that Lisa would assume all community debts, pay $55,000 for the total amount that she withdrew from the life-insurance policies,[13] and indemnify Timothy for any

---

[3] ECF No. 31-1 at 94.

[4] ECF No. 9 at 8, ¶¶ 5, 6.

[5] *Id*. at 9, ¶ 7.

[6] *Id*.

[7] *Id*. at 9, ¶ 8, 9.

[8] ECF No. 31-1 at 98–100.

[9] *Id*. at 108.

[10] ECF No. 9 at 9, ¶ 10.

[11] ECF No. 31-1 at 99.

[12] *Id*. at 108.

[13] ECF No. 31-1 at 11.

money that he had to pay clients as a result of her unauthorized acts.[14]

The original complaint was filed by Unite Here Health ("UHH") against Lisa, Timothy, and the Law Firm for reimbursement of medical-bill payments that it made on behalf of a personal-injury plaintiff whose tort lawsuit was settled—and whose settlement payment was fully disbursed to the Law Firm and others—without satisfying UHH's lien.[15] Timothy and the Law Firm answered UHH's complaint and cross-claimed against Lisa.[16] When Lisa did not respond to the complaint or the cross-complaint, default was entered against her on both.[17] UHH then moved for default judgment against Lisa.[18]

I initially denied UHH's motion without prejudice under the *Frow* doctrine because other defendants whom UHH alleged were jointly and severally liable with Lisa were still defending against its claims.[19] UHH eventually settled with those other defendants,[20] and I entered default judgment in favor of UHH on its lien claim against Lisa.[21] In the same order, default was again ordered against Lisa on Timothy and the Law Firm's cross-claims.[22]

Timothy and the Law Firm now move for default judgment on their contribution, indemnity, embezzlement, and intentional misrepresentation cross-claims against Lisa. Timothy

---

[14] ECF No. 9 at 9, ¶¶ 11, 12, 13.

[15] ECF No. 1.

[16] ECF No. 9.

[17] ECF No. 11; ECF No. 21.

[18] ECF No. 18.

[19] ECF No. 21.

[20] The claims against the other defendants were dismissed under FRCP 41(a)(1)(A)(ii). ECF No. 24.

[21] ECF No. 28.

[22] *Id*. I ordered the entry of default against Lisa in June 2016, but the Clerk of Court erroneously entered default judgment instead. *See* ECF No. 22.

previously estimated that his ex-wife had taken $1,268,338 from him and the Law Firm.[23] But after obtaining an opinion from an investigator at the Las Vegas Metropolitan Police Department, the cross-claimants now believe that they have been damaged in a lesser amount.[24] The Law Firm seeks $249,115.23 for the amount that Lisa allegedly took from the trust account, and Timothy seeks $129,255 for the amount that she allegedly withdrew from the life-insurance policies.

**Discussion**

**A. Default judgment standards**

Federal Rule of Civil Procedure 55(b)(2) permits a cross-claimant to obtain default judgment after default is entered based on a cross-defendant's failure to defend. After entry of default, the cross-complaint's factual allegations are taken as true, except those relating to damages.[25] "[N]ecessary facts not contained in the pleadings, and claims [that] are legally insufficient, are not established by default."[26] The court has the power to require a cross-claimant to provide additional proof of facts or damages in order to ensure that the requested relief is appropriate.[27] Whether to grant a motion for default judgment lies within my discretion,[28] which is guided by the seven factors outlined by the Ninth Circuit in *Eitel v. McCool*:

> (1) the possibility of prejudice to the [cross-claimant]; (2) the merits of [cross-claimants'] substantive [cross-]claim[s]; (3) sufficiency of the [cross-]complaint; (4) the sum of money at stake

---

[23] ECF No. 26 at 4, ¶ 12.

[24] ECF No. 31 at 4.

[25] *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam); FED. R. CIV. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

[26] *Cripps v. Life Ins. Co.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

[27] *See* FED. R. CIV. P. 55(b)(2).

[28] *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).

> in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.[29]

Default judgment is generally disfavored because "[c]ases should be decided upon their merits whenever reasonably possible."[30]

### B. Analyzing the *Eitel* factors

#### ***1. Possibility of prejudice to cross-claimants***

The first *Eitel* factor weighs in favor of granting default judgment against Lisa. Timothy and the Law Firm pursued their cross-claims against Lisa to recover for the damages that her acts caused them. Lisa has failed to participate in this case despite UHH's and the cross-claimants' attempts to include her by serving her with process—she was served with the original complaint, cross-complaint, and summonses for both nearly a year and a half ago. Lisa's refusal to participate compounds the cross-claimants' injuries by requiring them to expend additional resources litigating uncontested issues: like that Lisa admittedly embezzled money from the Law Firm and fraudulently withdrew money from the life-insurance policies. Without a judgment against Lisa, Timothy and the Law Firm have no other recourse for the harm that Lisa caused them.

#### ***2. Substantive merits and sufficiency of the cross-claims***

The second and third *Eitel* factors require the cross-claimants to demonstrate that they have stated a cross-claim on which they may recover.[31] Timothy and the Law Firm move for default judgment on their cross-claims against Lisa for contribution, embezzlement, indemnity, and intentional misrepresentation. The only claim that cross-claimants have demonstrated that they can recover against Lisa on is their claim for intentional misrepresentation.

---

[29] *Id.* at 1471–72.

[30] *Id.* at 1472.

[31] *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

***a. Contribution***

Timothy and the Law Firm argue that their cross-claim for contribution "arise[s] out of Lisa's express agreement to indemnify Mr. Titolo for their community debt and to reimburse him for monies paid to clients due to Lisa's unauthorized access of the Law Firm Account."[32] But that is not what they pled in their cross-complaint. Their cross-claim seeks equitable contribution, not contractual (express) contribution, and it is limited to contribution for payments made on UHH's claims against the joint tortfeasors in this action.[33] Because "default judgment in part turns on notice to the default[ed] defendant[,]"[34] I limit my analysis to what was pled.

"Contribution is a creature of statute . . . ."[35] "Under the Nevada statutory formulation, the remedy of contribution allows one tortfeasor to extinguish joint liabilities through payment to the injured party, and then seek partial reimbursement from a joint tortfeasor for sums paid in excess of the settling or discharging tortfeasor's equitable share of the common liability."[36] "A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability . . . is not extinguished by settlement."[37] Thus, "[a] tortfeasor seeking to perfect a contribution [cross-]claim through a prejudgment settlement process must pay an amount in excess of his equitable share of the liability **and must explicitly** extinguish the

---

[32] ECF No. 31 at 9.

[33] ECF No. 9 at 10, ¶ 18 (averring that, "[i]f the Cross-Claimants are determined to be jointly or severally liable in tort for any injury to Plaintiff in the underlying action, Cross-Claimants are entitled to contribution from Cross-Defendant in the amount of her equitable share of the entire liability by virtue of her acts and/or omissions").

[34] *Wilens v. Doe Defendant No. 1*, 2015 WL 5606238, at *12 (N.D. Cal. Jul. 31, 2015) (unpublished); *c.f. Fair Housing of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) (only "well-pled allegations in the complaint regarding liability are deemed true").

[35] *Doctors Co. v. Vincent*, 98 P.3d 681, 686 (Nev. 2004).

[36] *Id.*

[37] Nev. Rev. Stat. § 17.225(3).

liability of the joint tortfeasor."[38]

It does not appear that Timothy or the Law Firm extinguished Lisa's liability when they settled with UHH. After UHH settled its claims against Timothy and the Law Firm,[39] it sought and obtained default judgment against Lisa.[40] UHH focused its default-judgment motion on its claims against Lisa for conversion and unjust enrichment[41]—claims that UHH also alleged against Timothy and the Law Firm.[42] Thus, Timothy and the Law Firm have not demonstrated that they can recover against Lisa on their cross-claim for contribution.

***b. Embezzlement***

Timothy and the Law Firm argue that their cross-claim for conversion seeks funds that Lisa took from the Law Firm's client-trust and operating accounts and from the family's life-insurance policies.[43] Although this claim is entitled "embezzlement," I agree that it reads more like a conversion claim.[44] But I do not agree that, as pled, their cross-claim seeks damages suffered from Lisa's withdrawals from the life-insurance policies or from the Law Firm's operating account.[45] Once again, I limit my analysis to the cross-claim as it is pled.

Conversion is "a distinct act of dominion wrongfully exerted over another's personal property in denial of[ ] or inconsistent with his title or rights therein *or* in derogation, exclusion,

---

[38] *Doctors Co.*, 98 P.3d at 686.

[39] ECF No. 24 at 1, ¶ 1.

[40] ECF Nos. 25 (motion for default judgment), 28 (order granting motion), 29 (default judgment).

[41] ECF No. 18 at 5. For law and argument, UHH's renewed motion for default judgment referred the court back to UHH's original motion. ECF No. 25 at 2.

[42] ECF No. 1 at ¶¶ 25–38.

[43] ECF No. 31 at 10.

[44] *See* ECF No. 9 at ¶¶ 23–27. Embezzlement is a criminal charge, not a civil claim in Nevada. *See* Nev. Rev. Stat. § 205.300.

[45] *See* ECF No. 9 at 11–12, ¶¶ 23–27 (discussing only the funds that Lisa took from the Law Firm's client-trust account).

or defiance of such title or rights."[46] The Law Firm's conversion claim is complicated because it is limited to funds that Lisa allegedly took from the Law Firm's client-trust account. "In order to keep clients' money separated, a lawyer traditionally maintains a trust account separate from the law firm account, and keeps clients' money in the trust account."[47] That is precisely what the Law Firm pleads "was . . . the purpose" of this account—for "holding monies belonging to the client or other persons to whom the Law Firm any owe duties."[48] Funds in the client-trust account do not appear to be the cross-claimants' personal property, and the cross-claimants do not plead or otherwise establish what right or title they had to the funds that Lisa took from that account. Timothy and the Law Firm have not, therefore, demonstrated that they can recover against Lisa on their cross-claim for conversion.

***c. Indemnity***

Timothy and the Law Firm's second cross-claim alleges that Lisa is liable in equity and in contract to indemnify them for any judgment entered against them on UHH's claims in this case.[49] They move for default judgment on the contractual-indemnity portion of their cross-claim.[50] "Contractual indemnity is where, pursuant to a contractual provision, two parties agree that one party will reimburse the other party for liability resulting from the former's work."[51]

---

[46] *M.C. Multi-Family Dev., L.L.C. v. Crestdale Assoc., Ltd.*, 193 P.3d 536, 542 (Nev. 2008) (quotation marks and quoted reference omitted).

[47] *Washington Legal Found. v. Legal Found. of Wash.*, 271 F.3d 835, 867 (9th Cir. 2001); *accord* Nev. R. Prof. Conduct 1.5 (requiring lawyers to "hold funds . . . of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property" in "one or more identifiable bank accounts designated as a trust account maintained in the state where the lawyer's office is situated").

[48] ECF No. 9 at 11, ¶ 25.

[49] *Id.* at 10–11, ¶¶ 19–22.

[50] *See* ECF No. 31 at 9.

[51] *George L. Brown Ins. v. Star Ins. Co.*, 237 P.3d 92, 96 (Nev. 2010) (quotation marks and quoted reference omitted).

The cross-claimants' allegations do not fit into the contractual-indemnity framework.

The first problem is that the cross-claimants singularly rely on a divorce decree entered by a Nevada state court.[52] "Generally, when the district court approves and adopts the parties' agreement into the decree of divorce, the agreement merges into the decree unless both the decree and the agreement contain a clear and direct expression that the agreement will survive the decree."[53] "[W]hen an agreement is merged into a decree of divorce, it loses its character as an independent agreement and the parties' rights 'rest solely upon the decree.'"[54] This divorce decree does not contain clear and direct expression that the agreement, if there was one,[55] survives the decree.

Another problem is the gulf between what the cross-claimants seek to be indemnified for—payments that they made on UHH's claims in this case—and what the state court decreed. The state court decreed that Lisa will "assume all community debts of the parties other than those set forth herein" and she will "indemnify and hold [Timothy] harmless from said community debts."[56] The cross-claimants do not allege, and have not otherwise established, that payments made on UHH's claims in this case were a community debt. The decree further orders that Lisa "is required to reimburse [Timothy] for any monies [that] [Timothy] must pay to clients because of the defalcations by [Lisa] of clients' monies from [Timothy's] Attorney Trust Account[,] which was assessed by [Lisa] without [Timothy's] permission."[57] But UHH was not the Law

---

[52] ECF No. 9 at 9, ¶¶ 12–13.

[53] *Mizrachi v. Mizrachi*, 385 P.3d 982, 988 n.9 (Nev. 2016).

[54] *Mizrachi*, 385 P.3d at 988 n.9 (quoting *Day v. Day*, 395 P.2d 321, 322 (Nev. 1964)).

[55] The decree states that Lisa and Timothy "stipulated" to its contents, but it does not reference any agreement entered into between them. ECF No. 31-1 at 8.

[56] ECF No. 31-1 at 10.

[57] *Id.*

Firm's client; it was the lienholder of one of the Law Firm's clients.[58] Thus, Timothy and the Law Firm have not demonstrated that they can recover against Lisa on their claim for contractual indemnity.

***d. Intentional misrepresentation***

Timothy and the Law Firm lastly argue that they have sufficiently pled and established that they are entitled to recover on their cross-claim for intentional misrepresentation against Lisa for the funds that she took from the Law Firm's client-trust account.[59] To prevail on a claim for intentional misrepresentation, a cross-claimant must demonstrate: (1) that cross-defendant made a false representation; (2) the cross-defendant knew or believed that her representation was false or had an insufficient basis for making the representation; (3) the cross-defendant intended to induce the cross-claimant to act or refrain from action upon the misrepresentation; and (4) the cross-claimant was damaged as a result of relying on the misrepresentation.[60]

The cross-complaint sufficiently sets forth an intentional-misrepresentation cross-claim against Lisa under Rule 8's liberal pleading standard. The cross-claimants allege that Lisa falsely represented to Timothy that she had paid lienholders. They provide the transcript of a hearing before the Nevada State Bar where Lisa admits that she forged checks for Timothy to sign and falsified reconciliation reports for him to review.[61] It can reasonably be inferred from the allegations and evidence that Lisa intended the false reports and forged checks to prevent Timothy from discovering and stopping Lisa's fraud.[62] Timothy and the Law Firm allege that

---

[58] *See* ECF No. 1 at ¶ 3.

[59] ECF No. 31 at 10–11.

[60] *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998).

[61] ECF No. 31-1 at 98–100.

[62] *See Lopez v. Javie Corral, D.C.*, 2010 WL 5541115, at *4 (Nev. Dec. 20, 2010) (holding that a defendant's use of a stamp falsely stating that a debt to a plaintiff had been full paid "intended to induce [the plaintiff] to act, or refrain from acting, to preclude [the plaintiff] from recieving the full benefit of his contract").

they were damaged as a result of relying on Lisa's misrepresentations: they were sued by UHH and face liability to clients and other lienholders whose funds Lisa took from the client-trust account. Accepting these factual allegations as true, as I must in deciding a motion for default judgment, and examining the evidence provided, I find that Timothy and the Law Firm have pled and proved their cross-claim against Lisa for intentional misrepresentation. Because it is the only cross-claim that Timothy and the Law Firm have pled and proved, I limit my analysis of the remaining *Eitel* factors to this claim.

***3. Amount at stake***

The third *Eitel* factor "requires that the court assess whether the recovery sought is proportional to the harm caused by [cross-]defendant's conduct."[63] Cross-claimants seek to recover $249,115.23 for Lisa's withdrawals from several of the Law Firm's accounts. This amount is plainly significant, but I find that it is reasonable when balanced against Lisa's conduct, which includes potentially criminal embezzlement and intentional misrepresentation. So long as the cross-claimants can prove their entitlement to these damages, the amount is reasonable in light of the circumstances of this case.

***4. Possibility of dispute***

Under the next *Eitel* factor, I consider the possibility that material facts are disputed. Cross-claimants have adequately alleged intentional misrepresentation against Lisa. To support their cross-claim, they provide a divorce decree, a State Bar hearing transcript, and several affidavits. The facts in the cross-complaint are presumed true and are supported by evidence in the record. Further, Lisa has failed to oppose the motion. Thus, no factual disputes exist that would preclude the entry of default judgment against her.

***5. Possibility of excusable neglect***

The seventh *Eitel* factor requires me to consider whether Lisa's default may have resulted from excusable neglect. Despite being served with demand letters and process, Lisa never

---

[63] *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010) (citation omitted).

appeared in this lawsuit. There is no evidence that Lisa's default is the product of excusable neglect.

***6. Policy for deciding cases on the merits***

Lisa's failure to appear in this action renders a decision on the merits in this case "impractical, if not impossible."[64] She was served with the original complaint and summons over a year and a half ago, and she was served with the cross-complaint and summons nearly sixteen months ago.[65] She has yet to respond to these pleadings in any way. Entry of default judgment is therefore appropriate on this factor.

**C. Character and amount of award against Lisa**

The cross-claimants have not provided sufficient evidence of the amount that Lisa withdrew from the client-trust account for me to calculate the damages on this claim. Lisa admitted to embezzling $665,000 from the Law Firm at the State Bar hearing. The cross-claimants previously argued that Lisa was liable for taking $1,268,338 from the trust account and insurance policies. The cross-claimants are now seeking $249,115.23 for the withdrawals from the trust account.[66] They argue that their new damage amount is based on an opinion from the Las Vegas Metropolitan Police Department, but they fail to attach the opinion to their moving papers. I cannot properly assess the cross-claimants' damages without reviewing the (properly authenticated) opinion on which it is based.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that **cross-claimants' motion for default judgment [ECF No. 31] is DENIED without prejudice** to the filing of a renewed motion that

---

[64] *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

[65] ECF No. 12.

[66] Timothy now seeks $129,255 for the withdrawals from the life-insurance policies—even though the divorce decree orders that Lisa owes only $55,000 for those withdrawals.

cures the defects in the prior motion within 10 days.

DATED: July 21, 2017

Jennifer A. Dorsey
United States District Judge